HAMITER, Justice.
 

 The Ingersoll Corporation, organized un-der the laws of Louisiana and domiciled at Shreveport, seeks a judgment in this cause against Grady L. Rogers in the total amount of $2,472.57, the alleged indebtedness consisting of the following separate items: (1) The sum of $1,079.78 due as defendant’s share of the net losses of a business arrangement that formerly existed between the litigants; (2) the sum of $780.81 for certain advances made to defendant; (3) the sum of $611.98 for roofing materials which defendant purchased from plaintiff.
 

 To the petition defendant tendered exceptions of no right and no cause of action. On these being overruled he filed an answer generally denying the alleged indebtedness and claiming in reconvention the sum of $570.17.
 

 The ultimate judgment of the district court on the merits of the case (the original judgment was changed) condemned defendant to pay to plaintiff the sum of $611.98 (the above mentioned third item),, and, further, it dismissed as of nonsuit all other demands of the plaintiff and the re-conventional demand of defendant.
 

 From the judgment defendant appealed! suspensively and devolutively. Plaintiff has answered the appeal, praying that the judgment be amended so as to award it the total amount sought and to reject the demands of defendant.
 

 
 *85
 
 In this court defense counsel re-urge the exceptions of no right and no cause of action. They are predicated on the' contention that this action, according . to the allegations of plaintiff’s petition, presents solely a claim for a specific sum of money, arising out of the conducting of a partnership arrangement, by one partner against another; and that, under the law, a suit of this nature cannot be instituted until there has been a final accounting and settlement of the partnership affairs. The jurisprudence of this state recognizes the suggested legal principle, this court having held in numerous cases that where the demand is between partners on a cause ■of action
 
 growing out of
 
 partnership transactions only an action for accounting and settlement of the partnership will lie. Hennegin v. Wilcoxon, 13 La.Ann. 576; Crottes v. Frigerio, 18 La.Ann. 283; Stanton v. Buckner, 24 La.App. 391; Radovich v. Frigerio, Jr., 27 La.Ann. 68; West v. Ray, 210 La. 25, 26 So.2d 221. But the allegations of fact of the petition herein do not clearly disclose that plaintiff’s entire demand so arose; rather, at least as to a part thereof, they indicate that the item of $611.98 represents an indebtedness incurred subsequent to a discontinuance, as well as independently, of the partnership operations. This being true the exceptions cannot be sustained. A suit will not be dismissed on an exception of no cause of ac- - tion directed at the - petition where plaintiff’s allegations of fact set forth a cause - of action as to any part' of the'demand. Smith v. Kennon et al., 188 La. 101, 175 So. 763; Adkins’ Heirs v. Crawford, Jenkins & Booth, Inc., et al., 200 La. 561, 8 So.2d 539.
 

 Considering now the merits of the case it appears from the record that on or about June 1, 1946, plaintiff and the defendant entered into a verbal contract the purpose of which was to operate a roofing repair business under the name of Roofkoter Company. According to the agreement plaintiff would provide the necessary materials by purchasing them from the Tropical Paint Company, an establishment represented by the defendant on a commission basis as a sales agent, or from any other supplier; it would also furnish equipment, labor, insurance and certain funds directly needed in the conduct of the venture; and all of the things so provided would be charged by plaintiff to the Roofkoter Company. Defendant, on the other hand, obligated himself to assume the management of the business, this including the supervising of operations and the performing of promotional and contact work in obtaining repair jobs. All net profits from the Roofkoter Company’s undertakings would be shared equally.
 

 The record reveals a dispute between the parties, however, as to whether under the original agreement defendant would contribute and credit to' the -venture his sales commissions on purchases by plaintiff from the. Tropical Paint- Company; would provide the funds necessary, for his .traveling
 
 *87
 
 expenses in obtaining and carrying out roofing contracts; and would share one-'half of any resulting losses.
 

 The Roofkoter Company operated from the time of its inception (June 1, 1946) until on or about November 13, 1946, when the litigants agreed to discontinue and dissolve the business. Certain terms were then stipulated for a liquidation, but the parties dispute now the nature and extent of most of them. Thereafter, defendant conducted roofing operations independently-
 

 In nonsuiting plaintiff’s claim as to the items of $1,079.89 and $780.81 (alleged, respectively, to be defendant’s share of net losses and certain- advances made by plaintiff) the district court obviously ruled that they grew out of a partnership arrangement and could not be recovered in this action since no previous accounting between the partners was had. The ruling is correct, in view of the legal principle discussed above in connection with defendant’s exceptions of no right and no cause of action, unless there is merit to one of the following contentions urged by plaintiff, namely: (1) That a corporation, such as is plaintiff, is prohibited as a matter of public policy from being a member of a partnership; (2) that a partnership did not result from the agreement between plaintiff and defendant; (3) that the non-suited items did not arise out of any partnership arrangement; and (4) that the facts here are such that no complex accounting involving a variety of partnership transactions is necessary and, hence, the two items come within an exception to the above discussed principle of law.
 

 In support of the first contention-plaintiff’s counsel rely principally on 13 American Jurisprudence, verbo Corporations, Section 823, in which it is said that according to the prevailing view a corporation has no implied power to become a partner with an individual or another corporation, this limitation being based on public policy. The succeeding section (824) of the same authority states, ‘however, that although a partnership agreement made by a corporation may be annulled in certain instances by the state or by stockholders the court will not consider the question of -the validity of the copartnership, with respect to its transactions, where the interests of third parties are not involved. Neither do we find that the cited case of L. J. Mestier & Company v. A. Chevalier Pavement Company, Ltd., 108 La. 562, 32 So. 520, 522, lends aid to plaintiff’s position; rather, it appears to militate against it. Therein, the court observed :
 
 “
 
 * * * Plaintiff has claimed from the first that there was a partnership between itself and defendant quoad the venture, and that for that reason it had an interest in the profits. True, this corporation could not be a member of a partnership. It had no such power,
 
 yet it could bind itself to the extent of dividing profits as a consideration for advances made, as
 
 
 *89
 

 ■we understand was done in this case.”
 
 ^Italics ours.)
 

 Controlling, we think, is J. P. Barnett Company v. Ludeau, 171 La. 21, 129 So. 655, the holding of which was that the invalidity of a partnership contract, entered into between a corporation and an individual and which has been fully executed, could not be urged by one of the members of the joint venture.
 

 That a partnership arrangement existed between plaintiff and defendant, under the original verbal agreement of June 1, 1946, we entertain no doubt. “Partnership 'is a synallagmatic and commutative contract made between two or more persons for the mutual participation in the profits which may accrue from property, credit, skill or industry, furnished in determined proportions by the parties.” Civil Code, Article 2801. “Property, credit, skill and industry being the sources from which the profits of a partnership may be drawn, each of the partners may furnish either or all of these, in such proportions as they may mutually agree.” Civil Code, Article
 
 2809.
 
 And for determining whether a certain business arrangement constitutes a partnership this court in Chaffraix & Agar v. Lafitte & Company, 30 La.Ann. ■631, announced: “* * * The true, final, satisfactory, conclusive test is in the answer to the question: What was the real meaning and intention of the parties, as expressed in their contract, whether verbal or written? If they
 
 intended to create -a
 
 partnership, they will be treated as partners inter sese and with respect to third persons: If they did not intend to create that relation, but merely to divide the profits, or to share profits and losses, in a speculation or adventure, they will not be partners inter sese, nor will they be liable as such. * * * ”
 

 The importance of an intention to create a
 
 partnership is also pointed out in Collom
 
 v. Bruning, 49 La.Ann. 1257, 22 So. 744; Shushan Bros. & Company v. Drennan & Hillcoat et al., 158 La. 480, 104 So. 214, Reel v. Brewer et al., La.App., 6 So.2d 99, and Sheridan v. LeQuire, La.App., 15 So. 2d 118.
 

 The instant arrangement, according to the record, contained the several essentials of a partnership mentioned in the above quoted codal articles. Furthermore, the evidence as a whole discloses with legal certainty an intention of the parties to op erate as a partnership. Especially is this indicated by the transaction of business under a separate firm name, by the bookkeeping method employed, and by the failure of plaintiff’s president to challenge, when testifying, defendant’s previously made assertion that a partnership existed.
 

 The case of Glover v. Mayer, 209 La. 599, 25 So.2d 242, cited by plaintiff’s counsel, is inappropriate. For consideration there was only a plea to the jurisdiction of the court ratione personae, determinable on the issue of whether the pleadings of plaintiff disclosed the existence of a partnership.
 
 *91
 
 The court merely held that an intention to establish a partnership was in no manner reflected by the petition’s allegations of fact.
 

 Whether the disputed first and second items ($1079.78 and $780.81) are directly related to the partnership arrangement is a question that must be answered in the affirmative. The evidence, as well as the allegations of plaintiff’s petition, conclusively show that they represent an asserted indebtedness arising wholly by reason of the joint enterprise.
 

 Plaintiff’s contention that its demand requires no complex accounting involving a variety of partnership transactions, and hence comes within an exception to the above discussed legal doctrine, is not tenable. The evidence before us discloses a dispute respecting almost every phase of the business venture,: the terms of the original partnership agreement, the numerous bookkeeping entries, and even certain of the terms stipulated for the dissolution.
 

 No error is found with reference to the district court’s rendering judgment in favor of plaintiff on the third item. This alleged indebtedness of $611.98 is for roofing materials which defendant admittedly purchased from plaintiff subsequent to the dissolution of the Roofkoter Company. True, defendant testified, and in the reconventional demand he alleged, that a portion of these materials (of the value of $168.36) was -■used in completing jobs formerly undertaken by the partnership; however, if that be correct, he is entitled to and may receive credit therefor in an accounting and settlement of the partnership affairs.
 

 The reconventional demand of defendant for $570.17 was, in our opinion, properly nonsuited. The.several items thereof, including the mentioned claim of $168.36, relate to partnership operations and are to be considered only in the accounting proceedings.
 

 For the reasons assigned the judgment of the district court is affirmed. Each of the litigants shall pay one-half of the costs of this appeal.